IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NORA H. HUMPHRIES, ) | Civil Action No. 3:05-2434-PMD-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for SSI on November 30, 2002, and she applied for DIB on December 10, 2002. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held September 14, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated February 17, 2005, denying benefits and finding that Plaintiff was not disabled because she had the residual functional capacity ("RFC") to perform light work, and could perform her past relevant work as a fast food worker.

Plaintiff was fifty-seven years old at the time of the ALJ's decision. She has a fourth grade education and past relevant work as a fast food worker, cleaner/janitor, and cook. Plaintiff alleges

disability since July 21, 2002, due to leg and back problems and gastroesophageal reflux disease ("GERD").

The ALJ found (Tr. 18-19):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative joint disease and gastroesophageal reflux disease are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the [] residual functional capacity [for] light work activity.

7. The claimant's past relevant work as fast food worker did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8. The claimant's medically determinable degenerative joint disease and gastroesophageal reflux disease do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

On August 1, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on August 22, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. She also appears to allege that the ALJ failed to properly consider her credibility. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

    A.    Substantial Evidence

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. In particular, she claims that the ALJ failed to properly consider her mental impairments. Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff had the RFC to perform light work and thus could perform her past relevant work as a food service worker (light and unskilled) is supported by substantial evidence. Significantly, none of Plaintiff's treating or examining physicians or psychologists found that she was disabled or placed any restrictions on her ability to perform work. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).

Plaintiff alleges that her disability began on July 21, 2002. She had unspecified lower back surgery to treat "a bad nerve" when she was in her late twenties. Tr. 107. She also received periodic treatment for GERD prior to her alleged onset date. Tr. 97-106. Despite Plaintiff's claims that she became disabled on January 21, 2002, there is no record that she sought or received any medical treatment from September 2001 to January 2003, a period of approximately sixteen months. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994)(finding that inconsistency between the level of claimant's treatment and her claims of disabling pain supported the conclusion that claimant was not credible).

On January 3, 2003, almost one year after her alleged onset of disability date, Plaintiff was treated at the Kershaw County Community Medical Center for complaints of swelling in her left leg, back pain, and indigestion. She complained that her left leg hurt when she stood for long periods of time, but that the pain did not occur daily and did not occur every time she stood for a long

period. Examination revealed no signs of swelling and the examining physician prescribed Prevacid for GERD, explained the use of appropriate footwear, and told Plaintiff to take Tylenol as needed. Tr. 118, 161.

On February 28, 2003, Dr. Mitchell H. Hegquist examined Plaintiff. Her primary complaint was chronic low back pain with episodic radiating pain and swelling in her left leg, which she claimed began two years earlier. Dr. Hegquist noted that Plaintiff had no history of injury, and she had "no medical evaluation or treatment for this complaint except on one occasion...in January 2003." Tr. 107. He noted that Plaintiff's GERD was controlled with the use of Prevacid, her only medication. Id. Dr. Hegquist found that Plaintiff's extremities had no tenderness, deformity, instability, or swelling, other than a trace of edema in her left leg. She had no muscle spasm, no signs of atrophy, a normal gait, could heel and toe walk, was able to get on and off the examining table without any difficulty, and was neurovascularly intact with no obvious motor or sensory deficits. Although Plaintiff reported tenderness to palpation, she had full range of motion in her back. X-rays revealed sclerosis (hardening of tissue) in Plaintiff's lumbosacral spine, with probable narrowing at L4-L5. The vertebral bodies were otherwise normal and her intervertebral disc spaces were well-maintained. Mental status examination revealed that Plaintiff was alert and fully oriented, with grossly intact memory and normal thought processes, behavior, and intelligence. Tr. 109. Dr. Hegquist concluded that Plaintiff was moderately overweight and she had controlled GERD, recurrent low back pain, and a long history of cigarette abuse. Tr. 110.

The ALJ's decision is also supported by the finding of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be

treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On March 12, 2003, Dr. Robert Kulka, a State agency physician, reviewed Plaintiff's records and assessed her physical RFC. Tr. 133-140. Dr. Kukla opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. Tr. 134. A second State agency physician concurred with Dr. Kukla's findings in August 2003, with only an additional limitation that Plaintiff could never climb ladders, ropes, or scaffolds. Tr. 122-129.

The ALJ's determination that Plaintiff did not have a severe mental impairment is supported by substantial evidence. The ALJ specifically noted that there was evidence of a recent onset of compulsive disorder/depression/anxiety, but no evidence of the existence of those impairments for a continuous period of twelve months. Tr. 16. Additionally, the ALJ considered Plaintiff's mental impairments and concluded that they resulted in only mild restrictions of her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of deterioration or decompensation in work or work-like settings. Tr. 18.

Although Plaintiff was noted to have an "anxiety state" in August 2001 (Tr. 102-103), her medical records do not indicate treatment for any mental conditions until May 2004. On May 26, 2004, Plaintiff was evaluated by Kershaw County Community Medical Center counselor Sarah Reed ("Reed") for depression and anxiety symptoms. Plaintiff complained that she was worried about everything, and reported that she had been hospitalized many years previously for nerves, but did not remember being diagnosed with any illness, having any medication, or receiving any follow-up care. Tr. 153. On July 7, 2004, Plaintiff reported to Reed that she was less tearful, had an improved

appetite, and was more eager to engage with people. Her affect was brighter and more spontaneous. Tr. 151. On July 21, 2004, Plaintiff indicated that she was feeling better, was no longer crying, was sleeping better, and was generally feeling brighter. She reported "have to behaviors" consisting of frequent hand washing, checking under the bed, turning off lights, and repetitive cleaning. She also stated that her memory had worsened since she entered her fifties. Tr. 150. On August 4, 2004, Plaintiff reported that she was feeling good. Ms. Reed noted that Plaintiff's appetite, sleep patterns, and enjoyment of activities had "improved tremendously." Plaintiff reported that she enjoyed watching television, listening to the radio, and visiting with family members. Her affect was noted to be very spontaneous and positive. Both Plaintiff and her husband acknowledged her improvement, although Plaintiff indicated that her obsessive-compulsive symptoms persisted. Tr. 149. On August 18, 2004, Plaintiff reported to Reed that she was feeling better since her Zoloft dosage was increased and that she had much less checking under the bed (twice a day instead of ten times a day), checking the stove, and checking light switches. She reported sleeping six to seven hours per night with infrequent waking. Plaintiff indicated that she had heard bells and voices "for years." Tr. 148. In September 2004, Plaintiff was evaluated at the Kershaw County Mental Health Center. She reported no history of mental illness, but complained that she felt very emotional, hopeless, and worried. Plaintiff reported hearing voices, seeing things, and that she felt very shaky. Plaintiff was diagnosed with generalized anxiety disorder and akathisia.* Her GAF was reported to be 63 (indicating only mild symptoms of depression). Tr. 163-168. Plaintiff returned to see Reed on September 22, 2004, at which time Plaintiff was noted to be more calm and less anxious.

---

*Akathisia is "a condition of motor restlessness in which there is a feeling of muscular quivering, an urge to move about constantly, and an inability to sit still, a common extrapyramidal side effect of neuroleptic drugs." Dorland's Illustrated Medical Dictionary 42 (30th ed. 2003).

Plaintiff indicated that the voices had decreased and occurred only occasionally, and that she was focusing, sleeping, and feeling better. Plaintiff rated her nervousness as a two on a scale of one to ten, with 10 being the worst. Tr. 162.

Although Plaintiff now claims that she is disabled because of a mental impairment, she did not allege a mental impairment on her disability applications (see Tr. 46). See Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001)(Court found it significant that claimant did not allege disability due to a mental impairment). In March 2003, a "Medical Evaluation Referral" form completed by a State Agency disability examiner indicated that the examiner asked Plaintiff about her anxiety, and Plaintiff stated it must be a mistake. Tr. 131. Additionally, Plaintiff testified at the hearing that she stopped working due to physical, not mental, problems. Tr. 205.

Although Plaintiff complained of "hearing things," she acknowledged to Reed that this had occurred for "for years" and she testified that her nerves had never been any good. Tr. 148, 221. Despite these impairments, Plaintiff was able to perform light, unskilled work in the past. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)(claimant who worked with impairments over a period of years without any worsening of condition was not entitled to disability benefits); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)(finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration). Additionally, as discussed above, Plaintiff's symptoms improved with medication. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

B.	Credibility

Plaintiff appears to allege that the ALJ failed to properly evaluate her credibility because he failed to discuss Plaintiff's claims, as substantiated by her husband, that she spent much of the day either passively watching television or sleeping and much of the night looking for people who were calling her. The Commissioner contends that the ALJ properly evaluated Plaintiff's subjective complaints.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered the medical and non-medical evidence in making the credibility determination. The ALJ's decision is supported by the medical record, as discussed above. Despite her complaints of disabling pain, Plaintiff did not list any pain medications on her medication list and she testified at the hearing that she only took aspirin when she was hurting. Tr.

87, 219.  See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. §§ 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").  Although Plaintiff testified that she spend a large amount of time lying down, watching television, or sleeping, there is no evidence that her physicians limited her to such an inactive lifestyle.  See Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)(claimant's allegation that he had to recline or lie down several times a day was discounted because no physician suggested Plaintiff's condition required such reclining).  Plaintiff reported to Reed that she was involved at her church, stating on one occasion that she would be going to church three times in one week.  Tr. 153.

Inconsistencies in the record also support the ALJ's findings.  Plaintiff testified that Zoloft did not help her mental impairment, but her mental health counselor's notes indicate that she improved after she started taking her medication and Plaintiff and her husband both acknowledged the improvement.  See Tr. 148-51, 162.  Although Plaintiff's husband testified at the hearing that he did all the household chores, Plaintiff admitted in a daily activities questionnaire that she could do housework and she told an Agency employee that she cooked, cleaned, drove a car to the grocery store and to see friends, and generally she did "most things" because her husband received disability benefits and she had to take care of him.  See Tr. 61, 82, and 229.  Plaintiff testified at the hearing that she sometimes used a cane, but admitted that no physician ever prescribed one, and she did not bring a cane to the hearing.  Tr. 209.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered <u>de novo</u>, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

August 1, 2006
Columbia, South Carolina